**VanBREMEN, Appellant,**

v.

**GEER, Appellee.**

[Cite as *VanBremen v. Geer*, 187 Ohio App.3d 221, 2010-Ohio-1641.]

Court of Appeals of Ohio,
Fifth District, Ashland County.

No. 09–COA–037.

Decided April 9, 2010.

O. Joseph Murray, for appellant.

Raymond G. Fesmier, for appellee.

GWIN, Presiding Judge.

{¶ 1} Respondent-appellant, Brittany VanBremen, appeals a judgment of the Court of Common Pleas, Probate Division, of Ashland County, Ohio, entered in favor of petitioner-appellee, Christy Geer, on her petition for stepparent adoption of appellant's minor child, J.G. Appellant assigns five errors to the trial court:

{¶ 2} "I.   The trial court erred as a matter of law in giving Section 3107.07(A), revised code, as amended April 7, 2009, retroactive application.

{¶ 3} "II.   The trial court erred in failing to consider attempts by Ms. VanBremen to communicate with J.G. prior to July 14, 2008, which evidence discloses a pattern of significant custodial discouragement of communication."

{¶ 4} "III. The trial court erred in finding Ms. VanBremen failed to enforce an existing visitation order in a separate juvenile court proceeding."

{¶ 5} "IV. The trial court erred in failing to find that the manifest evidence supported a finding that petitioner Christy Ann Geer had significantly interfered with attempts made by Mr. VanBremen [sic] to communicate with her child, J.G., and that such interference was justifiable cause for failure to communicate making her consent to the adoption mandatory."

{¶ 6} "V. The trial court erred as a matter of law in granting the adoption of J.G. by petitioner Christy Ann Geer, for the reason that absent statutory prescribed parental consent, the probate court lacked jurisdiction to consider the best interests of the child for a proposed adoption or to grant such an adoption petition."

{¶ 7} Appellee is the current wife of the minor child's father and appellant is the biological mother of the minor child. Appellee filed a petition for adoption of J.G. on July 14, 2009. At the time of the filing of the petition for adoption, the father was the custodial parent of the minor child, and appellant had court-ordered visitation privileges. The minor child's father consented to the adoption. Appellant did not consent.

{¶ 8} Appellant was served with notice of the hearing on the petition for adoption. The notice stated that the hearing was scheduled for September 22, 2009, at 1:30 p.m. in the Probate Court of Ashland County. At the time of the hearing, appellee and the biological father were present in the courtroom. Appellant called the court, stating that she would be ten minutes late. Approximately 20 minutes after the hearing was scheduled to start, appellant had not appeared, and the court proceeded with the hearing without her.

{¶ 9} Both the biological father and the appellee testified. The father testified that in the year preceding the filing of the petition, appellant had not sent J.G. any cards, had not called him on the telephone, did not send him any e-mails, and had not communicated with him after July 14, 2008.

{¶ 10} Appellee testified that appellant did not send J.G. any letters, birthday card, or Christmas card, that she had not tweeted or texted him, and that she had not had any contact at all with J.G. between July 14, 2008, and July 14, 2009.

{¶ 11} Immediately after appellee testified, appellant appeared at the hearing without the benefit of legal counsel. The trial court did not provide appellant with the opportunity to cross-examine either appellee or the biological father, but appellant testified on her own behalf and offered five exhibits. Exhibit A was a certified-mail return receipt showing that appellee had signed for a card appellant sent to J.G. on June 5, 2008. Exhibit B was a Thanksgiving card from appellant to J.G. along with a packet of stickers for him, sent by certified mail on December

3, 2008. Exhibit C was a letter that appellant sent to J.G. by certified mail on September 24, 2008. Exhibit D was also a letter sent by appellant to J.G. by certified mail on August 20, 2008. Within the letter, appellant expressed her love and affection for J.G. In that letter, appellant again expressed her love for J.G. Exhibit E was also a letter appellant sent by certified mail to J.G. on July 7, 2008.

{¶ 12} The court found that it appeared that the card exhibit A referred to was received at appellee's home, but there was no evidence that the card was given to the child. The other certified-mail letters were marked "refused" and were returned to appellant.

{¶ 13} Additionally, appellant testified she had tried on numerous occasions to contact J.G. On one occasion she saw him with appellee at Wal–Mart, although the exact date of the encounter was not established. Appellant testified that she was able to kiss him and tell him she loved him. She told J.G., "I'm not seeing [you] because I don't want to because I can't." She stated that appellee then took J.G. away from her and said, "No, it's because you don't care."

{¶ 14} Appellant testified that she had sent numerous text messages to J.G., had made phone calls, and had stopped at the home. Appellant also stated, "I just want to be a part of [J.G.'s] life. And they're denying me that."

{¶ 15} Thereafter, the trial court took testimony again from both appellee and the biological father with respect to whether the adoption was in the best interest of the child. The court ruled that the allegations in the adoption petition were true and the adoption was in the best interest of the child. The court stated that it would issue a written opinion regarding whether appellant's consent was necessary for the adoption to proceed, after reviewing appellant's documentary evidence.

{¶ 16} Appellant asked the court if she could introduce the text messages that she had previously mentioned, to which the court replied, "Well I've concluded with the presentation of the evidence in this case, so I'm not willing to take any additional evidence at this point."

{¶ 17} The trial court issued a written opinion on October 14, 2009, granting the petition for adoption, finding that appellee had established by clear and convincing evidence, that appellant failed "without justifiable cause to provide more than de minimis contact with the child during the year immediately preceding the filing of the Adoption Petition," and that appellant's consent was not required for the adoption to proceed.

I

{¶ 18} In her first assignment of error, appellant argues that the trial court erred in giving retroactive effect to the revised version of R.C. 3107.07 and

applying it to the entire one-year period prior to the filing of the adoption petition. We agree.

{¶ 19} The Supreme Court of the United States has recognized that natural parents have a fundamental liberty interest in the care, custody, and management of their children. *Stanley v. Illinois* (1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551; *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599; *Troxel v. Granville* (2000), 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49. A parent's right to raise a child is an essential civil right. *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169. An adoption permanently terminates the parental rights of a natural parent. *In re Adoption of Reams* (1989), 52 Ohio App.3d 52, 55, 557 N.E.2d 159. Thus, courts must afford the natural parent every procedural and substantive protection allowed by law before depriving the parent of the right to consent to the adoption of his or her child. *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680.

{¶ 20} The termination of a natural parent's right to object to the adoption of her child requires strict adherence to the controlling statutes. *In re Adoption of Kuhlmann* (1994), 99 Ohio App.3d 44, 649 N.E.2d 1279. Ordinarily, the written consent of a minor child's natural parents is required prior to adoption. R.C. 3107.07 provides exceptions to this requirement.

{¶ 21} As amended effective April 7, 2009, R.C. 3107.07(A) now states:

{¶ 22} "Consent to adoption is not required of any of the following:

{¶ 23} "(A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."

{¶ 24} The language of R.C. 3107.07(A) prior to April 7, 2009, stated:

{¶ 25} "(A) A parent of a minor, when it is alleged in the adoption Petition and the Court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor * * * for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."

{¶ 26} The Ohio legislature has determined that "[s]tatutes are presumed to apply only prospectively unless specifically made retroactive." R.C. 1.48; see also *State v. Cook* (1998), 83 Ohio St.3d 404, 410, 700 N.E.2d 570.

{¶ 27} In *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (2001), 91 Ohio St.3d 308, 744 N.E.2d 751, the Supreme Court explained Section 28, Article II of the Ohio Constitution, stating that " '[t]he retroactivity clause nullifies those new laws that "reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective]." ' " Id. at 315, 744 N.E.2d 751, quoting *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 352–353, 721 N.E.2d 28, quoting *Miller v. Hixson* (1901), 64 Ohio St. 39, 51, 59 N.E. 749. The court set forth a two-prong test to determine whether the Constitution permits a statute to be applied retroactively. First, the court must "determine whether the General Assembly expressly intended the statute to apply retroactively." *Bielat* at 353, 721 N.E.2d 28, citing R.C. 1.48.

{¶ 28} With regard to this first step, the legislature did not expressly provide for the retroactive application of the new version of R.C. 3107.07(A).

{¶ 29} If the legislature has provided for the retroactive application of the statute, the court moves on to the second step, which is the question whether "the statute is substantive, rendering it unconstitutionally retroactive, as opposed to merely remedial [i.e., constitutionally retroactive]." (Emphasis omitted.) Id.

{¶ 30} Laws that may be applied retroactively are laws that are remedial, that is, ones that "merely substitute a new or more appropriate remedy for the enforcement of an existing right." *Cook,* 83 Ohio St.3d at 411, 700 N.E.2d 570. "On the other hand, a retroactive statute is substantive—and therefore unconstitutionally retroactive—if it impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction." (Emphasis omitted.) *Bielat,* 87 Ohio St.3d at 354, 721 N.E.2d 28.

{¶ 31} R.C. 3107.07 as revised does not merely substitute a new or more appropriate remedy for the enforcement of an existing right, and therefore it is not remedial in nature. The statute affects parental rights, which are not merely substantive but fundamental. A natural parent's rights are paramount until such time that the parent complies with requirements of a valid adoption proceeding. See *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047.

{¶ 32} The leading case defining the R.C. 3107.07(A) "failure to communicate" requirement is *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 18 OBR 419, 481 N.E.2d 613. In *Holcomb,* the Ohio Supreme Court found that failure to communicate is sufficient to authorize adoption without consent only if there is "a complete absence of communication" for the statutorily defined one-year period. *Holcomb* at 367, 18 OBR 419, 481 N.E.2d 613. Thus, the prior version of R.C. 3107.07, in effect at the start of the one-year period, essentially provided that any contact whatsoever was sufficient to require appellant's consent to the adoption,

while the revised version now requires that the contact be more than de minimis. We find that the revised version places a lesser burden on the petitioner who seeks to adopt the child without the consent of the natural parent and conversely places a higher burden on the natural parent who opposes the petition. We conclude that the revised version of R.C. 3107.07 cannot be applied retroactively.

{¶ 33} The adoption petition was filed approximately three months after the effective date of the revised statute. We find that the trial court erred in applying the revised statute to the period of time prior to its effective date. The trial court should have applied the former version of the statute from the starting date of the one-year period, July 14, 2007, until the effective date of the revision, April 7, 2009.

{¶ 34} Appellant's first assignment of error is sustained.

## II, III, IV, & V

{¶ 35} In her second through fifth assignments of error, appellant argues that the trial court erred in granting appellee's adoption petition. We agree.

{¶ 36} Appellee had the burden of proof in this action. "The party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication." *Holcomb,* 18 Ohio St.3d at 368, 18 OBR 419, 481 N.E.2d 613. See also *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 104, 515 N.E.2d 919. "No burden is to be placed upon the non-consenting parent to prove that his failure to communicate was justifiable." *Holcomb* at 368, 18 OBR 419, 481 N.E.2d 613.

{¶ 37} "Once the clear and convincing standard has been met to the satisfaction of the probate court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof. * * * The determination of the probate court should not be overturned unless it is unsupported by clear and convincing evidence." *Id.*

{¶ 38} Therefore, for appellee to prevail in this adoption proceeding without appellant's consent, she must prove by clear and convincing evidence that (1) there has been a failure of communication or support by the natural parent for the one-year period and (2) the failure is unjustified.

{¶ 39} The court found that appellant does not dispute that she failed to communicate with her child during the one-year period immediately preceding the filing of the adoption petition. There appears no doubt that appellant's attempts to contact the child by certified mail were unsuccessful. However,

appellee must also establish that the failure to communicate was without justifiable cause. "If the natural parent presents evidence showing that his failure to communicate was not unjustified, the petitioner must prove by clear and convincing evidence that such failure was not justified." *In re Adoption of Shea* (July 24, 1990), 10th Dist. No. 90–AP–245, 1990 WL 106468, citing *Holcomb.*

{¶ 40} *Holcomb* further held:

{¶ 41} "Significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child. The question of whether justifiable cause exists in a particular case is a factual determination for the probate court and will not be disturbed upon appeal unless such determination is unsupported by clear and convincing evidence." 18 Ohio St.3d 361, 18 OBR 419, 481 N.E.2d 613, paragraph three of the syllabus.

{¶ 42} The trial court found that appellant sent letters by certified mail, the letters were refused, and the letters were returned to appellant. We agree with appellant that this represents significant interference with the communications between her and the child.

{¶ 43} Appellee's assertion that R.C. 3107.07(A) requires the court to look at *only* the one year immediately preceding the filing of the petition is not legally supported. R.C. 3107.07(A) specifies that the natural parent must have failed to communicate or support the minor child for *at least* one year immediately preceding the petition without justifiable cause. Of the letters from appellant, three were sent during the period of time that the older version of R.C. 3107.07 was in effect. Because we find that appellant made attempts to contact the child during the one year prior to the filing of the petition, and while former R.C. 3107.07 was applicable, we need not decide whether the court should have looked at the attempted communications prior to July 14, 2008.

{¶ 44} We find that appellant met her burden of proving that she had complied with R.C. 3107.07(A) in attempting to communicate with her son. Appellee failed to present clear and convincing evidence that appellant's failure to communicate was without justifiable cause. The fact that appellee and/or the biological father significantly interfered with her attempts to communicate via letter with J.G. cannot be held against appellant.

{¶ 45} We find that the trial court's findings are not supported by clear and convincing evidence. Appellant's second through fifth assignments of error are sustained.

{¶ 46} For the foregoing reasons, the judgment of the Ashland County Probate Court is reversed, and the judgment is vacated. Appellant's parental rights are hereby reinstated.

Judgment reversed<br>and vacated.

HOFFMAN, J., concurs.

DELANEY, J., concurs in part and dissents in part.

DELANEY, Judge, concurring in part and dissenting in part.

{¶ 47} I dissent from the majority's opinion with respect to appellant's first assignment of error. I would find that the trial court properly applied the new version of R.C. 3107.07(A), because the petition for adoption was filed on July 14, 2009, three months after the new version of R.C. 3107.07(A) took effect, although part of the conduct in question occurred under the prior version.

{¶ 48} I would therefore overrule appellant's first assignment of error.

{¶ 49} Regarding appellant's second through fifth assignments of error, I concur in the majority's opinion that the trial court's findings are not supported by clear and convincing evidence. Regardless of which version of the law applies, appellant's communications with her son would satisfy the higher burden set forth under the new version of R.C. 3101.07(A), and therefore her conduct would also be sufficient to establish contact under the prior version as well.

{¶ 50} As noted by the majority, on numerous occasions preceding the filing of the adoption petition, appellant attempted to send letters to her son. Those letters were sent by certified mail, someone at the residence (either appellee or the biological father) marked the letters refused, and they were returned to appellant. We are unaware who refused the letters because the trial court failed to allow appellant to cross-examine appellee and the biological father. Appellant also attempted to introduce text messages into the record to show her attempts to contact her son. The trial court erroneously refused to allow appellant to introduce these messages into the record.

{¶ 51} Even in light of the trial court's refusal to afford appellant "every procedural and substantive protection" allowed by law before depriving her of the right to consent to the adoption, In re Hayes (1997), 79 Ohio St.3d 46, 679 N.E.2d 680, the record clearly shows that appellant wishes to have a relationship with her biological son. She attempted numerous times to contact him by letter and once in person at a Wal–Mart, where appellee refused to let her have contact with her son.

{¶ 52} I am troubled not only by the conduct of appellee and the biological father, but also by the actions of the trial court in failing to allow appellant a full opportunity to show her attempts to contact her son. I find this to be particularly troubling since both appellee and the biological father testified, under oath, that in the year preceding the filling of the petition, appellant never contacted J.G., either by text message or by card or letter. Had the trial court allowed appellant to fully present her case, the text messages may have provided more proof of additional attempts to contact J.G.

{¶ 53} For these reasons, I concur in the majority decision in reversing and vacating the judgment of the trial court and reinstating appellant's parental rights.